UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Midland/Odessa Division

| | |
|---|---|
| **ROBIN SCOTT AKINS, M.D.,** *Plaintiff,* v. **TEXAS ONCOLOGY, P.A.,** *Defendant.* | Civil Action No.: 7:25-cv-00471 |

CIVIL COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY

Plaintiff Robin Scott Akins, M.D., brings this action against Defendant Texas Oncology, P.A. ("Texas Oncology" or "TOPA") for violations of the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h) ("FCA").

## Parties

1. Plaintiff is a resident of Midland, Texas.

2. Defendant is a domestic Texas professional association with its headquarters at 12377 Merit Drive, Suite 700, Dallas, Texas 75251. The Defendant may be served with process through its Registered Agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically the FCA.

1

4. This Court has personal jurisdiction over Texas Oncology because it is a Texas professional association headquartered in Dallas, Texas, and conducts significant business in this judicial district.

5. Venue in this judicial district and division is also proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant has extensive and deliberate contacts in this judicial district and because a substantial part of the events giving rise to this claim occurred within this judicial district.

## Factual Allegations

6. Akins is a medical doctor licensed to practice medicine within the State of Texas. He was first licensed to practice in the State on April 2, 2004, and he has maintained his license at all times since 2004.

7. Akins specializes in radiation oncology and became board certified in radiation oncology by the American Board of Radiology in May 2010.

8. Texas Oncology is an affiliate of, and partners with, U.S. Oncology to deliver services and products to patients.

9. Akins and TOPA negotiated and signed a Physician Employment Agreement for Akins to work as a radiation oncologist in TOPA's Midland, Texas office at the Midland Allison Cancer Center ("Midland Clinic").

10. The parties executed the Physician Employment Agreement on August 8, 2014, with an effective date of December 1, 2014.

11. The Physician Employment Agreement sets forth conditions under which Akins could become a shareholder of TOPA at Section 12.

12. Akins began working for TOPA at the Midland Clinic on or around January 5, 2015.

13. Midland Memorial Hospital granted privileges to Akins.

14. Akins was the only radiation oncologist in Midland and was the chief of radiation oncology at Texas Oncology-Midland.

15. At all times relevant to this complaint, the medical directors of radiation oncology for Texas Oncology were Dr. Ajay Dubey and Dr. William Taylor.

16. Diane Smith was the chief radiation therapist in the Midland Clinic in 2015 when Akins started working in the Midland Clinic.

17. TOPA promoted Ericka Ary in or around March 2015 as the practice director for the Midland Clinic to replace the former practice director who moved to Ft. Worth, Texas.

18. Akins and Ary disagreed regarding when and how to treat emergency patients, whether insurance pre-authorization is required before treatment of emergency patients, and who would be financially responsible in the event the emergent treatment was denied by the patient's insurance.

19. In 2015, Akins began reporting to Dubey that patients who were referred directly to him for radiation oncology consultation were instead diverted to medical oncology.

20. Akins became a shareholder of TOPA on or about April 1, 2016, pursuant to the Subscription Agreement signed by the parties. The Subscription Agreement incorporates requisite portions of TOPA's Shareholders' Agreement and Amendment I thereto.

21. Akins purchased 1,000 shares of Class A Common Stock (nonvoting) of TOPA at the price of $50.00 per share on April 1, 2016.

22. Akins purchased one share of Class B Common Stock (voting) of TOPA on April 1, 2016, and each year between 2016 and his termination in 2024, for a total of nine shares of Class B Common Stock.

23. Ary's instructions to Midland Clinic scheduling staff were validated in or around September 2017 that all new patient consults must go to medical oncology before proceeding to radiation oncology.

24. Akins complained to Dubey again in September 2017 about patients being diverted from radiation oncology to medical oncology. Akins told Dubey in an email that he was told that "instructions were given to send all patients to medical oncology first."

25. Dubey denied that any such instructions were given and that no such policy existed within TOPA at the Midland Clinic.

26. Akins complained to Dubey about staffing issues, IT inoperability, and the office staff's resistance to change within the Midland Clinic.

27. Akins called for an independent review of the Midland Clinic by TOPA leadership in 2017 due to his persistent concerns regarding nursing, dosimetry, and physics.

28. TOPA confirmed Akins's concerns in findings by its regional medical directors of medical physics, Dr. Brett Heintz and Mr. Jeffrey Limmer, in or about November of 2018 and by its medical director of radiation oncology, Dr. William 'Bill' Taylor in or about January of 2018.

29. Ary resigned as the Practice Director of the Midland and Odessa Clinics in or around February 2018 and was replaced as practice director at the Midland Clinic only by Cord Dixon. Ary became an independent contractor to TOPA.

30. Dixon continued the practice of diverting all consults to medical oncology before proceeding to radiation oncology.

31. In or around September or October 2018, a TOPA patient received an incorrect dose of radiation because TOPA's physicist failed to follow Akins's written medical directive. TOPA proposed a performance improvement plan for the physicist, but they resigned instead.

32. TOPA recommended Akins to undergo physician coaching in or about November of 2018 based on unfounded allegations that Akins retaliated against Midland Clinic staff and the misadministration of radiation for which the physicist was responsible.

33. Akins declined physician coaching in 2018 given that no rationale for the recommended coaching was provided to Akins.

34. Smith retired from the Midland Clinic in 2019 and was succeeded by Mariah Coy in or about September of 2019.

35. Coy was originally hired by TOPA to work in its Odessa practice but was moved to the Midland Clinic because of conflicts with the Odessa physicians as well as a lack of competence affecting work quality.

36. Coy and Dixon quickly became friends and often met in Coy's office with the door closed.

37. Coy complained to Dixon and TOPA administration that Akins purportedly was angry and violent. These allegations were based on manufactured and false events that were never investigated nor corroborated.

38. Coy falsely reported in or around September or October 2019 that Akins broke a computer keyboard when the computer did not recognize his correctly entered/typed password. Akins received an email from then-regional medical director Dr. Vance Esler asking to talk about why Akins broke the keyboard in frustration.

39. Akins learned that Coy had falsely reported Akins for breaking the keyboard and issued a new replacement keyboard. To establish a chain of custody regarding the unnecessary replacement—since his keyboard was not actually broken, contrary to Coy's claim, Akins asked Coy to show him the unopened replacement keyboard. However, Dubey then called Akins to warn him that talking to Coy about the incident was retaliating against her.

40. Akins told Dubey he felt he was being retaliated against, to which Dubey responded by threatening Akins not to make such an allegation again, as TOPA's lawyers were "bigger and badder than any lawyer Akins could hire."

41. Dubey also told Akins that, when it came to staff reports/complaints, "staff would be believed 100-percent of the time over physicians."

42. Akins was required to engage in physician coaching with Dr. David Teegarden in 2021 after another letter from Dr. Dubey in December 2020 with similar unfounded accusations as previously made. No logical explanation was provided as to the exact nature of the coaching recommendation or the desired goals despite requests from Akins to Dr. Dubey and Dr. Teegarden.

43. Akins's medical assistants and nurses were primarily Hispanic.

44. Amber Moran (Hispanic) was Akins's medical assistant in 2022. Bella Fitch (Hispanic) became his nurse in 2022.

45. In or around July or August of 2022, Akins expressed concern to Moran and Fitch about the challenges presented by hyphenated last names, which are more common among Hispanic patients. This issue significantly increases the time required to locate patient charts, imaging, and billing records due to inconsistent data entry. Akins directed Fitch to coordinate with Coy to ensure all of the radiation therapists were billing patients under the correct name and

6

correctly scheduling weekly on-treatment patients for each 5-day treatment block to maximize clinic efficiency.

46. TOPA then ordered Akins to undergo cultural sensitivity training during a call with Dubey in or around August 2022.

47. Coy and Dixon attempted to solicit complaints from Fitch and Moran to support Coy and Dixon's unsubstantiated narrative that Akins was purportedly racist, culturally insensitive, and/or mistreated staff. However, Fitch and Moran refused to generate this manufactured evidence.

48. Monica Leyva-Rayos was a radiation therapist for TOPA at the Midland Clinic. Leyva-Rayos worked under the supervision of Coy.

49. Coy and Monica Leyva-Rayos mistreated a patient in September 2022 when they failed to perform the required time-out per department protocol for patient safety and inadvertently swapped their treatment plan with that of another patient. The Texas Medical Board investigated the incident. TOPA blamed Akins for the mistreatment, but it was Coy who failed to follow Akins's treatment plan and her direct report staff who failed to follow department policy.

50. Coy and Leyva-Rayos were responsible for the mistreatment because Coy was the chief therapist and Leyva-Rayos was the therapist who performed the mistreatment. TOPA took no action against either Coy or Leyva-Rayos.

51. TOPA suspended Akins on or about December 2, 2022, for two weeks and required him to undergo physician coaching again with Dr. Teegarden. However, Dr. Teegarden's provided assessment stated that Akins did not need physician coaching following a 360-degree assessment of Akins in which Teegarden gathered data and feedback from Akins's colleagues.

52. Akins responded to the suspension with further complaints to TOPA's administration that Dixon, Coy, and others in the Midland Clinic undermine and countermand his authority in a letter provided directly to Dr. Steven Paulson, President and Chairman of the Board, via email, to which no response was received.

53. Coy was moved out of the Midland Clinic in or around December of 2022 and was transferred to the Odessa practice where she subsequently resigned upon being demoted from Chief Therapist within approximately 45 days.

54. Dixon became the acting chief therapist after Coy's departure per the decision of Tim Skelly, West Texas Regional Director of Texas Oncology, despite having no active state certification in radiation therapy. In this position throughout 2023, Dixon was responsible for all facets of that position as instructed by Skelly.

55. TOPA hired Robert Garza as its new chief radiation therapist in or around September 2023.

56. The Midland Clinic purchased a new linear accelerator in or around October 2023. All treatments and patient consultations were moved to the Odessa office for several weeks to allow for its installation.

57. Leyva-Rayos was the only radiation therapist at the Midland Clinic licensed to perform Computed Tomography (CT) scans and treatments after administration forced the resignation of the only other full-time licensed radiation therapist, Glenn Duggan, in early November 2023.

58. Leyva-Rayos's license to operate CT machines knowingly expired and was not renewed in or around September of 2023. During her workday, she also was actively pursuing

additional training for dosimetry (treatment planning) and she was doing homework while on the clock which was enabled by Dixon.

59. Dixon, as practice manager and acting Chief Therapist in 2023, was responsible for ensuring that all medical and therapist licenses were properly and timely renewed to prevent expiration.

60. Leyva-Rayos continued to scan and treat patients using CT machines and linear accelerators between in or around September 2023 until at least in or around March 2024. Leyva-Rayos was the only radiation therapist to perform CT scans during this period.

61. Garza discovered that Leyva-Rayos's license expired in April or May of 2024. Garza immediately made this discovery to Akins. Garza informed Akins that, per Dixon, "Dr. Akins is not to find out about this." Akins informed Garza, who acts as the intermediary between physicians and administrators in his role as Chief Therapist, that this constituted Medicare fraud due to false billing for treating patients with an unlicensed therapist. Garza confronted Leyva-Rayos who told him she knew her license was expired. Akins continued to discuss with Garza several times between April 2024 and August 2024 that this needed to be reported to federal authorities either by the company or by Akins in accordance with US Oncology's corporate compliance and the federal laws.

62. Garza also reported Leyva-Rayos's expired license to Dixon as Practice Director, to Skelly as West Texas Regional Director of Texas Oncology, and to Stacy Hartman, the cancer center services director for U.S. Oncology.

63. Akins told Garza, who reported to Hartman, that he believed that Leyva-Rayos's treatment of patients without a license constituted Medicare fraud because Medicare only pays for

lawfully performed medical treatments and, without a valid license, Leyva-Rayos did not perform lawful medical treatments.

64. Hartman investigated and, in or around July 2024, told Garza, who relayed the findings to Akins, that she did not believe Leyva-Rayos's continued treatment of patients without a valid license was Medicare fraud because Medicare could not identify which therapist operated which therapy machine on which day for each patient.

65. Akins's concern regarding Leyva-Rayos's expired license and his concerns of possible Medicare fraud were relayed by Garza to Tim Skelly, executive director – west region for U.S. Oncology and Texas Oncology in an effort to properly notify administration for appropriate reporting to the federal authorities/agencies as required. Skelly told Dixon that this was "his mess and he was responsible for cleaning it up" to which Dixon became red-faced and slammed his company issued cell phone on the desk in an act of rage as witnessed by Garza.

66. Akins met with Dixon, Garza, Dr. Kristina Tack (Radiation Safety Officer for Texas Oncology Midland) and other department clinical staff for a Radiation Safety Meeting on or about August 6, 2024, regarding Leyva-Rayos's expired license, his concerns about stopping Medicare fraud, and inappropriate billing.

67. Akins told Dixon, Garza and Tack that he believed each and every instance of Leyva-Rayos's unlicensed treatments and patient interactions must be logged in ASTRO's radiation oncology incident learning system ("ROILS").

68. Dixon told Akins that he would decide what to do and report it during a future 4th quarter Radiation Safety Committee meeting at a future date.

69. Akins met with Dubey and Dr. R. Steven Paulson, M.D., TOPA's president, at the Midland Clinic on August 8, 2024, at which time Dubey and Paulson terminated Akins's

10

employment "without Cause," effective October 8, 2024, under the Physician Employment Agreement.

70. Akins was placed on leave for the entire 60-day notice period required in Section 3.3 of the Physician Employment Agreement from on or about August 6, 2024, until October 8, 2024.

71. TOPA continued to order studies, to order laboratory blood work, and to bill and collect for medical services and treatments under Akins's medical license after his termination on August 8, 2024, and to falsely misrepresent treatments and patient consents as 'supervised by Dr. Akins'.

## COUNT I
## False Claims Act Retaliation
## 31 U.S.C. § 3730(h)

72. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully alleged herein.

73. At all times relevant to this complaint, Plaintiff was an "employee, contractor, or agent" as defined under the FCA, 31 U.S.C. § 3730(h).

74. Plaintiff reasonably believed that TOPA intended to defraud the United States government by billing Medicare for services performed by a person whose professional activities required licensure and who was, at the time the services were performed, unlicensed.

75. Plaintiff engaged in protected activity when he reported concerns about Medicare fraud to Hartman, Skelly, Garza, Dixon, Dubey, and Paulson in an effort to stop the practice.

76. Defendant retaliated against Plaintiff because of his protected activity when it terminated his employment on August 8, 2024, effective October 8, 2024.

77. Defendant's stated reason that it terminated Plaintiff "without Cause" is pretextual.

11

78. For Defendant's unlawful retaliation against Plaintiff in violation of the FCA, Plaintiff is entitled to such legal or equitable relief as will effectuate the purposes of the FCA, including reinstatement, two times the amount of back pay, interest on the back pay, compensation for any special damages sustained, and the recovery of litigation costs and attorneys' fees.

## COUNT II
### Common Law Breach of Contract
### Unpaid Wages under the Employment Agreement

79. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully alleged herein.

80. Plaintiff and Defendant entered into a contractual agreement for his employment under the Physician Employment Agreement on or about December 1, 2014.

81. Defendant is required to pay Plaintiff for services performed under Plaintiff's medical license pursuant to the Physician Employment Agreement.

82. Defendant was required to stop billing under and benefiting from the use of Plaintiff's medical license by at least October 8, 2024.

83. Defendant did not stop benefiting from Plaintiff's medical license by October 8, 2024.

84. Defendant breached the Physician Employment Agreement by continuing to collect under Plaintiff's medical license after October 8, 2024.

85. Defendant breached the Physician Employment Agreement when it did not pay Plaintiff wages for amounts collected from the use of his medical license after October 8, 2024.

86. Plaintiff is entitled to damages in the amount of wages from amounts collected from August 8, 2024 through the last date in which TOPA collected under Plaintiff's medical license , and injunctive relief requiring that Defendant cease using Plaintiff's medical license.

## Prayer for Relief

Based on the foregoing, Plaintiff respectfully requests that the Court enter judgment in his favor and award to him the following relief:

a. Legal and equitable relief, including reinstatement;

b. Economic and compensatory damages;

c. Liquidated damages;

d. Specific performance;

e. Attorney's fees and costs;

f. Pre-judgment interest; and

g. Any other relief that this Court deems just and equitable.

## Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, Plaintiff demands a jury trial as to all issues so triable.

Respectfully submitted,

Dated October 15, 2025.                    Respectfully submitted,

*/s/ Michael S. Alfred*
Michael S. Alfred
State Bar No. 24014416
VerisLaw, PLLC
4843 Colleyville Blvd., Suite 251-391
Colleyville, Texas 76034
(817) 678-4121 telephone
(512) 717-7230 fax
malfred@verislaw.net
***Attorney for Plaintiff***

Jack Stick
State Bar No. 00795156
VerisLaw, PLLC
Suite E 240-624
3801 North Capital of Texas Highway
Austin, Texas 78746
(512) 710-6000 telephone
(512) 717-7230 fax
jstick@verislaw.net
***Attorney for Plaintiff***

R. Scott Oswald, Esq., MD Bar #25391
Kellee Boulais Kruse, Esq., DC Bar #994450
Ben Considine, Esq., DC Bar #90024499
The Employment Law Group, P.C.
1717 K Street NW, Suite 1110
Washington, D.C. 20006
(202) 856-7802
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
kkruse@employmentlawgroup.com
bconsidine@employmentlawgroup.com
***Attorneys for Plaintiff***